v. Vidal. Mr. Mills? May it please the Court, this appeal presents three issues. The first issue is the meaning of the predefined regions in the claims of the 743 patent. The only meaning that matters in claim construction is the meaning in the context of the patent. Without identifying any affirmative support in the intrinsic evidence, the Board adopted an extrinsic construction that a predefined region is any predefined region in a genome, including an entire chromosome. But Phillips rejected exactly this approach, in which the specification is consulted only after a determination is made, based on an extrinsic source, as to the meaning of the claim. While Petitioner's expert, Dr. Gabriel, proposed this construction, she admitted during her deposition that she did not even look at the specification. But isn't your argument founded on the notion that a chromosome comparison is inconsistent with E1 in claim 1? So it is exactly correct that defining a predefined region as including an entire chromosome is incompatible with the step E1, normalization step, being used But it's not inconsistent with E2, right? The E1 prong, the first avenue for detecting copy number variation in the claim, is rendered non-functional Okay, but you didn't answer my question. It's not inconsistent with E2? We have not argued that it becomes incompatible with E2. Okay, but it says and or, so does this come down to the meaning of and or? The argument, when the predefined regions are not uniform or substantially uniform, then it renders the first avenue for detecting copy number variation non-functional. Okay, but it says and or, which would mean or, include or? Right. We do not dispute that the claims include the or. We believe that the best meaning of the claims does not render non-functional the first avenue for detecting copy number variation in the claim. Okay, I'm not sure that I understand where that gets us if the chromosomal comparison is consistent with E2, as you seem to agree. So in any claim construction, the first task is to look at the specification including the claims to understand what it means in the context of this specific patent. And the specification speaks with one voice as to the meaning of the predefined regions. They tell us that predefined regions are uniform or substantially uniform. And that's the aspect that when it's abandoned, it renders the E1 prong non-functional, which is a large portion of the claim. In addition, the specification tells us that the predefined regions are orders of magnitude smaller than entire chromosomes. And it also tells us that they are far more numerous than the number of chromosomes. So that's what the specification tells us. Now the question we should be asking is what part of the specification tells us that the predefined regions are any region, including an entire chromosome? And there really is nothing. By the time the board got to the specification, they were no longer asking the question about what does the specification tell me about the invention. They were evaluating whether anything in the specification rules out the extrinsic construction that they had already adopted. They pointed to two things in the specification that they evaluated. The first thing they pointed to was the use of the words in some embodiments. And from the use of the words in some embodiments, they reasoned that there must be embodiments that are not expressly delineated there. We don't necessarily disagree with the board on that point. The question is, if there are implied additional embodiments that are not expressly delineated, are those embodiments consistent with what the specification tells us about predefined regions, or are they inconsistent with what the specification tells us about predefined regions? If you look at the specification, you won't see any place where it tells you that the predefined region is an entire chromosome, or that the predefined regions and the claims lack uniformity, or at least substantial uniformity. The second place that the board points to in the specification is where it says that the predefined regions are in a genome. Now again, we don't disagree with the board that it's necessary that the predefined regions be in a genome. But it being a necessary prerequisite to be in a genome does not mean that being in a genome is sufficient to make it a predefined region. When you step back and look at the specification, there's nothing in the specification that tells us that predefined regions in these claims are entire chromosomes. Well, there's nothing that says it is, but at column 16, line 11 to 12, when they're suggesting that you can select predefined regions in the genome, this particular embodiment that they're referring to doesn't have the no greater than 100 kb and substantially uniform limitation. And, you know, while it says there are at least 50 regions, it goes on to say there only has to be a minimum amount of predefined windows up to 10. That would include whole chromosomes. So you have an embodiment. I certainly agree with you that there are several embodiments disclosed in this patent and that some of those embodiments, because they're limited to no more than 100 and substantially uniform, wouldn't extend to an entire chromosome. But what about this other passage at column 16, which doesn't have that limitation and which seems to me to expressly allow for, at column 45, line 62 to 66, which seems to expressly allow for the possibility of a predefined region being an entire chromosome? There are, your Honor is correct, that there are embodiments in the patent that are not the claimed predefined regions. One example is that there's a place where the specific... When you say they're not the claimed predefined regions, they're not the predefined regions the way you want us to construe the claim, but that's a circular argument. What I'm saying is there are embodiments of the claims where they're talking about windows and bins that are not the predefined regions. There's an example where they do talk about a predefined, they use a different word, portion or something different, where they're talking about something that you're going to pull out and you're going to ignore because it's a bad area that you don't want to be looking at. But when you read the specification and you're looking at the actual parts of it that are related to the actual claims here at issue... It talks about predefined windows, i.e. regions up to 10, that that's not relevant to these claims, that that is a different and distinct embodiment that the patentee chose not to cover in these claims? Yes. Okay, but why? Like what... The words predefined regions... Here's my problem. The word predefined regions of genome includes chromosomes and it's plain and ordinary meaning. So then I have to look at the specification to ascertain whether there is a disavowal of that plain and ordinary meaning. That's just how we do claim construction. And when you have some embodiments that make it clear that it couldn't include a whole chromosome, it has to be some smaller section, but other embodiments that would allow for the inclusion of a whole chromosome, how have you successfully disavowed that broader interpretation at that point? So thank you, Your Honor. And I believe your question goes to whether there's an express definition in this patent. And we're not arguing that there's an express definition as to the predefined regions in this patent. But there has to be, because the plain and ordinary meaning of predefined regions of a genome undisputedly includes a chromosome. So the... Undisputedly. No one argued otherwise. So then the question is, in the context of this patent, has the patentee made clear to the world that it intended for that claim language to encompass something different in the context of these claims? So respectfully, I disagree that the plain and ordinary meaning establishes that the predefined regions are entire chromosomes. Can be. Can be. Not is. Can be. So there is no source in the specification for that construction. It's completely extrinsic. This term goes to a predefined region of a genome, correct? So it's... Yes or no. Is that what these claim terms are covering? A predefined region of a genome. There's specific predefined regions of the genome that are used in specific ways for specific purposes. If you look at the way the board construed the claims... Does the claim extend to a predefined region of a genome? I'm just wondering what the of, a predefined region of a milk carton, a predefined region of a refrigerator. Is it a predefined region of a genome? It is true that a prerequisite of the predefined region is that it's a region of the genome. That is... So is a chromosome a region within a genome? It's not a predefined region of the genome as used in the claims of the 743 patent. Right. You know, you don't help when you say stuff like that, right? You don't help your case because you're not explaining to me anything about why. You understand my argument perfectly, and instead you're just kind of throwing words at me, but it doesn't actually respond to my argument and concern. And you know, I don't know how to decide this case yet, but you're not convincing me. Yes. So I apologize if it seemed to the court that I wasn't being responsive. I'm trying to be responsive to the court's questions. The point that I'm making is that when you read the specification carefully, there are various embodiments, and some of those embodiments involve windows or bins where the regions are not predefined. When you predefine the regions, it's important that the regions be uniform or substantially uniform, because if they're not, you don't get the ability to detect the copy number variation that you do if they're predefined. And the problem is that's only with regard to some embodiments. There are other embodiments in the spec that don't have that limitation. I think if your honor reads the specification carefully, the parts of the specification that discuss using the predefined regions are uniform or substantially uniform regions. And that if they're not discussing substantial uniformity, that it's not the predefined region embodiment. What about Column 45? The one that you already agreed is a different embodiment, but you argue not covered by the scope of these claims. Yes, Column 45 is not the predefined regions in the claims. Because you say so. It's not the helpful part. Well, I mean, that's not what it's talking about. It's not what it says. So for example, in Column 45, it says there's predefined windows that are known throughout the genome to be hard to sequence, and therefore you filter them out from the data set. That's not the predefined regions that the claim is talking about. It's a different embodiment. They're doing something different. Okay. If I can move on to the unique sequence reads, are you at the second issue on appeal? With respect to claims 24 and 26, the board construed unique sequence reads to contain a unique sequence such that the sequence can be identified without the need for a barcode. In making this construction, the board pointed to Column 37 of the specification, which discusses unique sequence data used for identifying individual molecules in the sample. In the institution decision, the board applied that construction and evaluated whether the true reference satisfies it. The board had looked at— In the panel's response, you didn't raise any different arguments with respect to claims 24 and 26, right? In the Pat Nooner response, the Pat Nooner response rested on the status quo, which were the arguments that were made for the institution. It didn't say that. It just didn't say anything that was different about 24 and 26, right? There wasn't an additional separate argument in the Pat Nooner response for claims 24 and 26. So why isn't there a forfeiture? It's not forfeited because the issue was live in the case. It was disputed by the parties, and it was addressed by the board. The board certainly didn't think it was forfeited. They addressed it. They addressed it in a manner that changed the outcome from what it had been in the institution decision. They retained the claim construction that they had applied at institution, but they applied it differently, where before they recognized that uniqueness of the loci in the genome does not tell you whether the molecules are unique sequence rates of those molecules. So at institution, they got it right. In the final written decision, they got confused about the application, and the status quo was that Garten had already explained why the board's adopted construction was not satisfied by CHU. And because the board provides no meaningful rationale under its construction for applying to CHU, we would ask that the board's judgment as to claims 24 and 26 be reversed. Okay. Ms. Craven? Good morning, your honors, and may it please the court. The board correctly construed predefined regions to include entire chromosomes. There's nothing in the claims that limits the predefined regions to any specific length or number, and the board did not err in declining to read the specific embodiments into the claims. However, as Chief Judge Moore pointed out, there is an embodiment that would encompass entire chromosomes where the windows are at least 10 and at least 20, which would include the 23 chromosomes of the human chromosome. And while counsel says this is not the predefined regions that are claimed, in their motion to amend, and this is at JA-677, they particularly pointed for predefined regions for support in their earlier priority applications that they were the same as chromosomal windows. So I think it's hard for them to then say now that predefined regions and windows and the other terms used in the specification aren't referring to the same embodiment. Garden has inserted that the predefined regions as entire chromosomes doesn't make sense in the context of the claim language because you can't detect a copy number variation just with E1 as in CHU. However, the board found that CHU detects a copy number variation in aneuploidy using Step E1 and Step E2 of CHU. And the claim, as Judge Dyke points out, expressly permits that process for detecting a copy number variation. And so there's nothing inconsistent with the claim language of Claim 1 in using an entire chromosome as a predefined region. If there wasn't an or there, and if, for example, if there was a dependent claim that says this determining step has to be performed exclusively by E1 without the or option, would this be a different case? It would need to have a different record for that to be found by CHU. CHU does have a section where it does detect a copy number variation just using E1, but the board didn't rely on that in this case. It relied on the fact that there's the normalization across chromosomes and then you go on to compare to a reference, a control sample, to detect the copy number variation. 24 and 26 require E1, right? So they require E1, but they break it down then by whether there's its reads or unique sequence reads. So it doesn't remove Step the and or of CHU E2 in... I guess the argument would be that with respect to 24 and 26 that because you'd have to use E1 that that's inconsistent with a chromosomal comparison. They don't really make that argument. They don't make that argument and I don't think they're reading claim 24 that way. I think what they're reading claim 24 to do is to limit claim 1 to just unique sequence reads as opposed to reads or unique sequence reads. So claim 24 doesn't require you to detect the copy number variation just using Step E1, but it requires when you use Step E1 that you're using unique sequence reads. So it's still in claim 24 and 26 has that and or proposition for detecting the copy number variation. Before then turning to the argument about the unique sequence reads, GARDEN didn't make a separate argument about claims 24 and 26 in its patent owner response as the board expressly stated. The board didn't say forfeiture or waiver, but when the board says, I don't see a separate argument for patentability, that's essentially what the board means. The board then goes on to rely on the patent owner's evidence, expert testimony that CHU does in fact teach unique sequence reads through this filtering step. And that is not inconsistent with the board's institution decision. The board's construction of unique sequence reads was really a tautology except for the use of barcodes. Unique sequence reads are reads with unique sequences that don't have to use barcodes then for you to identify them as unique sequence reads. And it's undisputed that CHU does not use barcodes. And in fact, the board went on for claims 24 and 26 in the set ground two with KIND where KIND does use barcodes. And even though GARDEN hadn't made a separate argument for those claims, notes that under its construction of unique sequence reads, KIND can't support that obviousness decision. So it's not inconsistent with the board's construction of unique sequence reads. GARDEN gives a number of new constructions in the reply brief before this court as to why CHU doesn't teach unique sequence reads, but those were not arguments that were presented to the board. And then it's also consistent with what the board found in its institution decision. It found that CHU for claim one uses reads, but it didn't reject the expert's testimony about the filtering to produce unique sequence reads, which is the testimony that it then relies on in its final written decision. We didn't get to the motion to amend, counsel on the other side didn't get to the motion to amend, but I'm happy to answer any questions this court may have about that. And if there are no questions, I ask this court to please affirm the board's decision. Thank you. Thank you, Ms. Grannon. Mr. Mills, you have some rebuttal time. Thank you, Your Honor. I want to just address two questions that were discussed previously by my friend. So to Judge Dyke's question about claims 24 and 26 requiring E1, I believe that they do require E1, and that it was the burden of the petitioner to demonstrate their unpatentability that that burden never shifted to the patent owner. And to the discussion of column 45, to Chief Judge Moore's questions, I believe reviewing column 45, if you read it very carefully, I think that a way to understand it is, if you look at line 15, for instance, after the data filtering and mapping, they say the plurality of sequence reads generates a chromosomal region of coverage. And then they're looking at a variety of things that you can do after you've already done this quantification and mapping step onto the chromosome. And so in some of these cases, they're setting windows or bins based on trying to get a certain number of reads in each window, right? They're doing something different. It's different than a predefined region that's set before you're doing your quantification. I think that's the reason that this embodiment on 45 is not the claimed embodiment. Unless there are further questions, we'll ask the board for the remedies in our brief. Okay. We thank both counsel. In this case, we'll take another submission.